1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SVETLANA GYULNAZARYAN, | )  1:11-cv-01790 GSA |
| | ) |
| Plaintiff, | )  **ORDER REGARDING PLAINTIFF'S** |
| | )  **SOCIAL SECURITY COMPLAINT** |
| v. | ) |
| | ) |
| MICHAEL ASTRUE, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

## **BACKGROUND**

Plaintiff Svetlana Gyulnazaryan ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income benefits pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Gary S. Austin.[1]

//

//

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  (*See* Docs. 10 & 11.)

1

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for benefits in April 2008, alleging disability as of April 1, 2004.  AR 84-87.  Plaintiff's application was denied initially and on reconsideration; she then requested a hearing before an Administrative Law Judge ("ALJ").  AR 73-83.  ALJ William Wallis held a hearing and subsequently issued an order denying benefits on March 25, 2010, finding Plaintiff was not disabled.  AR 17-27.  On August 5, 2011, the Appeals Council denied review.  AR 5-8.

### Hearing Testimony

ALJ Wallis held a hearing on March 8, 2010, in Fresno, California.  Plaintiff appeared and testified; she was assisted by non-attorney representative Anthony Gonzales.  Vocational Expert ("VE") Thomas Dachelet also testified.  AR 364-406.

Plaintiff was born May 27, 1960, in Armenia.  AR 372.  She attended a year of college in the United States.  AR 372.  She currently receives general relief and food stamp benefits.  Plaintiff lives with her husband who is disabled.  AR 394-395.

Plaintiff last worked as an elderly caregiver in 2004.  AR 373.  She worked seven days a week, for four hours in the morning and two hours in the evening.  AR 373.  She assisted the individuals with dressing, bathing and other personal hygiene, performed bed and wheelchair transfers, did laundry and prepared meals.  AR 373-374.  Eventually another individual was hired because she could no longer assist a client with the transfer from bed to wheelchair.  AR 374.  For a three year period between 1997 and 2000, Plaintiff worked for a medical supply company.  She prepared receipts, organized the warehouse, stocked shelves, and unloaded trucks.  AR 375.  That position required that she be on her feet for eight hours, standing and walking.  AR 376.

On April 1, 2004, Plaintiff became disabled.  AR 376.  She has not worked since that date.  AR 377.  Plaintiff had "extremely high blood pressure and diabetic back pain," her feet

---

[2]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

hurt and she could not walk, and her back ached.  Her vision was affected, and she was dizzy and lightheaded.  AR 376.  She had difficulty breathing and felt pressure on her chest.  She could not work because she had to sit down to rest, but then had difficulty sitting so she would need to lie down.  AR 377.  Plaintiff acknowledged she has complained of high blood pressure, heart problems, a tumor, thyroid problems, lower back pain, dizziness, colon problems, headaches, leg pain, post traumatic stress disorder, depression, and foot pain.  AR 378.

With specific regard to back pain, the pain is in her center, lower back, going right to left. AR 379.  She explained that during a surgery performed, "all [her] intestines . . . were st[u]ck together," and although the surgeon "separate[d her] intestines," following the surgery she has had pain in her back "and in the intestines."  AR 379.  Because of her back pain, Plaintiff cannot bend or squat.  AR 384.  The medication she takes for her back helps a little but does not relieve the pain completely.  AR 383-384.  If she does not take the medication for her back, the pain she feels is a ten on a scale of one-to-ten.  AR 384.  With medication, Plaintiff estimated that the pain is a six on a scale of one-to-ten.  AR 384.

Plaintiff feels pain in her ankles (right more than left), has arthritis in her knees (left more than right), and feels pain and arthritis in both hips.  AR 380.  The pain cannot be relieved, even when she is lying down.  AR 381.

Blood pressure readings average 200 over 130 or 140, but have exceeded 150.  It continues to rise.  AR 398.  She takes her blood pressure reading every morning; on the morning of the hearing her blood pressure was 200 over 130.  AR 399.  The doctors are always worried about her blood pressure, and therefore, they ignore her other pains.  AR 381-383.  Further, the medications she has been prescribed make her dizzy, and cause blurred vision and stomach pains. AR 383.

Plaintiff weighs 317 pounds and is about five feet, four inches[3] tall.  Within the last year, she has gained about twenty-five pounds and continues to gain weight.  AR 398.

---

[3]More specifically, Plaintiff testified she was about 164 centimeters in height.  AR 397.

1    Plaintiff suffers from post traumatic stress disorder and depression as well.  It affects her

2    ability to remember things in the present.  AR 390.  Plaintiff takes medication to treat her post

3    traumatic stress disorder and depression, but does not attend counseling or receive other

4    treatment.  AR 392.  With regard to memory, if Plaintiff were asked to go to the grocery store for

5    five items and she did not write the items down on a list, she would not remember any of the five

6    items when she got to the store.  AR 390-391.  She has difficulty concentrating and

7    understanding others.  AR 393.  Noises and voices irritate her, so Plaintiff does not like

8    television.  However, sometimes she will watch five minutes of it with her husband.  AR 391.

9    She prefers to be alone.  AR 391.  She does not do the grocery shopping, but does occasionally

10   go with her daughter to do so.  On those occasions, she uses the cart to assist her when walking.

11   AR 391-392.

12   Plaintiff does not cook, but does use the microwave to heat food.  She used to cook, but

13   because she is forgetful, she almost burned the house down by leaving food on the stove.  AR

14   396.  She does not do any vacuuming, sweeping or cleaning, as her daughter does those things

15   once a week.  She does occasionally do laundry.  AR 397.

16   When she was asked how much weight she could lift and carry during an eight-hour

17   workday, Plaintiff indicated she could lift about a pound; an eight-pound gallon of milk is too

18   heavy, for example, and she cannot lift it.  AR 385-386.  When she was asked how long she

19   could stand at one time, Plaintiff initially indicated she could not stand, then estimated she could

20   stand in the same place for two to three minutes with something to hold on to.  AR 386.  She

21   could do this again after resting.  AR 397.  She can walk with a cane for about five to ten minutes

22   maximum.  AR 386.  She could not walk again for ten minutes within an eight-hour period

23   however because her feet hurt.  AR 388.  She can sit for about a half-hour at one time, before she

24   would need to stand or "do something else."  AR 388.  She needs to lie down for fifteen minutes

25   at a time, about six times during an eight-hour period.  AR 388.  Plaintiff cannot crawl, kneel,

26   stoop, bend or squat, nor can she use stairs.  AR 388-389.  Plaintiff can use her hands, but "[n]ot

27

28                                                4

1   much." AR 389-390.  She is right-handed, and her left shoulder hurts all the time in the "bone."

2   AR 390.

3           When asked about a regular day, Plaintiff indicated she cannot sleep through the night.

4   She takes medication to help her sleep.  AR 395.  She has difficulty combing her hair and her

5   daughter helps her because her left arm does not "go[] up much."  It gets tired and she cannot

6   finish her hair.  AR 395.  She gets up about 9 a.m. and takes her medication and eats breakfast.

7   Her daughter comes by to help her dress.  She will make any calls for appointments or

8   medications.  AR 396.  She may read a newspaper ad, or watch television with her husband, but

9   for the most part she lies down.  AR 396-397.  Plaintiff does not have any hobbies or activities;

10  she used to cook and bake, shop and garden, but she can no longer do those things.  AR 397.

11          VE Dachelet described Plaintiff's past work as a home health aide, medium and semi-

12  skilled, with an SVP[4] of 3; and medical supply representative, medium with an SVP of five.  AR

13  401.  Record keeping skills could transfer to other work.  AR 402.

14          In a hypothetical question posed by the ALJ, the VE was asked to assume a hypothetical

15  person of the same age, education, language and work experience, who had the residual

16  functional capacity ("RFC") to lift and carry, push or pull, twenty pounds occasionally and ten

17  pounds frequently, with the ability to sit for six hours in an eight-hour day, stand or walk for two

18  hours in an eight-hour workday, who could occasionally climb ramps or stairs, balance, stoop,

19  kneel, crouch, and crawl, but could never climb ropes, ladders, or scaffolds.  The hypothetical

20  person would be further limited to occasional overhead reaching with the left upper extremity,

21  the need to avoid concentrated exposure to workplace hazards, and occasional contact only with

22  the general public.  AR 402-403.  VE Dachelet indicated that such an individual could not

23  perform Plaintiff's past work.  AR 403.  However, other sedentary, unskilled work could be

24  performed by such an individual.  For example, ampoule sealer, census code 964, DOT[5] 559.687-

25  ─────────────────

26          [4]"SVP" refers to the Specific Vocational Preparation.

27          [5]"DOT" refers to the Dictionary of Occupational Titles.

28                                          5

014, with 3,050 positions in California from a total labor force of 84,540.  Assuming a reduction for limited public contact, at least 40,000 jobs would remain at the sedentary and unskilled level. AR 403-404.  The VE also identified a loader of semi-conductor dyes, census code 896, DOT 726.687-030, with 2,719 positions in California; and a stuffer, census code 880, DOT 731.685-014, with 597 persons employed in California.  AR 404.  National figures are obtained by multiplying the aforementioned numbers by about nine.  AR 404.

In a second hypothetical, the VE was asked to consider the same individual, with the following RFC: the ability to lift and carry one pound occasionally or frequently, could stand for thirty-two to fifty-four minutes in an eight-hour day (for two to three minutes at a time), walk for ten minutes in an eight-hour day, lie down up to an hour and a half total in an eight-hour workday (for fifteen minutes at one time), who could occasionally perform overhead lifting with the non-dominant upper left extremity, with the inability to stoop, bend, squat, kneel, or crawl, or to concentrate for two-hour periods throughout an eight-hour workday.  AR 404-405.  VE Dachelet testified that such an individual would be precluded from performing Plaintiff's past work, and could not perform any other work in the national economy.  AR 405.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 153-363.  The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 17-27.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 29, 2008.  AR 19.  Further, the ALJ identified the following severe impairments: high blood pressure, peripheral vascular disease, obesity, major depressive disorder and post traumatic stress disorder.  AR 19.  Nonetheless, the ALJ determined that the severity of

1  the Plaintiff's impairments or combination of impairments did not meet or exceed any of the

2  listed impairments.  AR 19-21.

3          Based on his review of the entire record, the ALJ determined that Plaintiff has the RFC

4  to:  lift and carry, push or pull, twenty pounds occasionally and ten pounds frequently; to stand or

5  walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday; can

6  occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl, but cannot climb

7  ropes, ladders or scaffolds; is limited to occasional overhead reaching with the left upper

8  extremity; should avoid concentrated exposure to workplace hazards; and may occasionally

9  interact with the general public, but can relate to coworkers and adapt to usual changes in a work

10 setting.  AR 21-25.

11         Next, the ALJ determined that Plaintiff was not capable of performing her past relevant

12 work.  AR 25-26.  However, considering Plaintiff's age, education, work experience, and RFC,

13 the ALJ concluded there were jobs that exist in significant numbers in the national economy that

14 Plaintiff could perform.  AR 26-27.  Therefore, the ALJ concluded Plaintiff was not disabled.

15 AR 27.

16                                          **<u>SCOPE OF REVIEW</u>**

17         Congress has provided a limited scope of judicial review of the Commissioner's decision

18 to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

19 this Court must determine whether the decision of the Commissioner is supported by substantial

20 evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

21 *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

22 *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

23 reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

24 401.  The record as a whole must be considered, weighing both the evidence that supports and

25 the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

26 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

27

28                                                    7

1   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

2   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

3   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

4   substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

5   Cir. 1987).

6   **REVIEW**

7   In order to qualify for benefits, a claimant must establish that he is unable to engage in

8   substantial gainful activity due to a medically determinable physical or mental impairment which

9   has lasted or can be expected to last for a continuous period of not less than twelve months.  42

10  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

11  such severity that he is not only unable to do her previous work, but cannot, considering his age,

12  education, and work experience, engage in any other kind of substantial gainful work which

13  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

14  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

15  Cir. 1990).

16  Here, Plaintiff argues that the ALJ erred by (1) failing to either credit or reject an opinion

17  that she could not engage in prolonged sedentary work; (2) failing to give sufficient reasons for

18  rejecting Plaintiff's testimony; and (3) failing to consider the question of disability under the non-

19  mechanical application of the grids.  (*See* Docs. 14 & 16.)

20  **DISCUSSION**

21  ***Consideration of the Opinion Regarding Sedentary Work***

22  Plaintiff argues that the ALJ erred with regard to his assessment of the opinions offered

23  by Nicholas Orme, M.D., and more specifically, regarding Plaintiff's ability to remain seated for

24  extended periods of time and that she suffered from day time drowsiness.  (Doc. 14 at 14-15; *see*

25  *also* Doc. 16 at 3-5.)  The Commissioner contends however that the ALJ did not reject the

26  functional limitations expressed by Dr. Orme.  (Doc. 15 at 8-11.)

27

28  8

1      **1.     *The Legal Standards***

2          Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

3   who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

4   (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

5   physicians).  As a general rule, more weight should be given to the opinion of a treating source

6   than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

7   647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another

8   doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

9   1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another

10  doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

11  reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722

12  F.2d 499, 502 (9th Cir. 1983).

13         The opinion of an examining physician is, in turn, entitled to greater weight than the

14  opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

15  *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating

16  physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

17  uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion

18  of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

19  can only be rejected for specific and legitimate reasons that are supported by substantial evidence

20  in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

21         The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

22  that justifies the rejection of the opinion of either an examining physician or a treating physician.

23  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can

24  reject the opinion of a treating or examining physician, based in part on the testimony of a

25  nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.

26  1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For example,

27

28                                                9

1  in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician,

2  "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of

3  Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752.  Rather, there was an

4  abundance of evidence that supported the ALJ's decision:  the ALJ also relied on laboratory test

5  results, on contrary reports from examining physicians, and on testimony from the claimant that

6  conflicted with her treating physician's opinion.  *Id*. at 751-52.

7  **2.**   ***The ALJ's Findings***

8  ALJ Wallis' relevant findings provide as follows:

9  On January 30, 2008, Dr. Orme, also from Fresno Shields Medical
10  Center[,] was of the opinion that the claimant was permanently unable to
   participate in jury duty because of her medical condition[s] which included:
   coronary artery disease with frequent arrhythmias which could lead to syncope;
11  severe migraine headaches that were non responsive to treatment; chronic vertigo
   with frequent episodes causing room spinning, dizziness and nausea; *chronic low*
12  *back pain with radiculopathy which make it impossible for her to remain in a*
   *seated position for extended periods*; clinical depression and insomnia for which
13  she was taking multiple medications that cause daytime drowsiness.  While Dr.
   Orme considered multiple conditions and articulated some specific limitations, I
14  accounted for all of these in the above residual functional capacity.  Therefore, I
   accord this opinion only some weight.
15

16  AR 24-25, emphasis added & internal citations omitted.

17  **3.**   ***Analysis***

18  Initially, it must be noted that the Commissioner argues that the ALJ's RFC properly

19  incorporates Dr. Orme's sedentary limitation because the ALJ found she "would be limiting [*sic*]

20  to sitting for only two hours in an eight hour workday."  (*See* Doc. 15 at 9; *see also* Doc. 15 at 10

21  ["consistent with Dr. Orme's opinion, the ALJ found that Plaintiff could sit for only two

22  hours"].)  The Commissioner is mistaken.  In fact, the ALJ's RFC finding expressly found that

23  Plaintiff is able to "sit for six hours in an eight-hour workday."  *See* AR 21.[6]

24

25

26  [6]The Commissioner indeed cites to page 21 of the Administrative Record for her assertions, but is simply
27  incorrect.

28  10

1   Dr. Orme is a treating physician who has offered an opinion that conflicts with the

2   opinions of examining and state agency physicians.  As a result, the ALJ is required to provide

3   specific and legitimate reasons for discounting the opinion.  Here, because the ALJ's only

4   preferred reason for affording Dr. Orme's opinion "only some weight" is that he accounted for

5   all of Dr. Orme's limitations in his RFC, this finding is simply not supported by substantial

6   evidence.

7   Specifically, Dr. Orme's January 30, 2008, letter to the jury commissioner states, in

8   pertinent part, that due to Plaintiff's "chronic low back pain with radiculopathy," she cannot

9   "remain in a seated position for extended periods."  AR 199.[7]  While "extended" is not defined

10   for purposes of Dr. Orme's correspondence, this Court finds that six hours in an eight-hour

11   workday can be reasonably understood to amount to an extended period of time.  Therefore, Dr.

12   Orme's opinion conflicts with those of Dr. Damania (AR 296 ["able to sit six hours"]) and the

13   state agency physicians (AR 228 [can sit about "6 hours in an 8-hour workday"]).

14   Thus, because the ALJ did not offer any other specific and legitimate reasons for

15   affording Dr. Orme's opinion regarding a limitation to sitting for extended periods of time less

16   than great weight, and because the ALJ's RFC is in fact inconsistent with Dr. Orme's opinion

17   regarding Plaintiff's ability to sit, this matter will be remanded for further proceedings.

18   ***The ALJ's Credibility Findings***

19   Plaintiff contends the ALJ erred in assessing her testimony.  (Doc. 14 at 16-16; *see also*

20   Doc. 16 at 5-6.)  In response, the Commissioner asserts the ALJ's credibility findings are

21   supported by substantial evidence.  (Doc. 15 at 11-14.)

22   **1.     *The Legal Standards***

23   A two step analysis applies at the administrative level when considering a claimant's

24   credibility.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must

25

26   _____

27   [7] The diagnosis of "LBP [w/] radiculopathy" or "LBP" is noted in this provider's progress notes at AR 187-190, 192-194, 204-205, 207-209, 216-218.

28   11

produce objective medical evidence of an impairment that could reasonably be expected to

produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies

the first step and there is no evidence of malingering, the ALJ may reject the claimant's

testimony regarding the severity of his symptoms only if he makes specific findings that include

clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is

not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*,

161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of

specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it

impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial

evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific

to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave

to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v.*

*Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's

reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

testimony by the claimant that appears less than candid, unexplained or inadequately explained

failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

activities, claimant's work record, or the observations of treating and examining physicians.

*Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

## 2.  *Analysis*

The first step in assessing Plaintiff's subjective complaints is to determine whether

Plaintiff's condition could reasonably be expected to produce the pain or other symptoms

alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, ALJ Wallis found

that Plaintiff suffered from the severe impairments of high blood pressure, peripheral vascular

disease, obesity, major depressive disorder, and post traumatic stress disorder. AR 19.

Additionally, the ALJ found that "[Plaintiff's] medically determinable impairments could

1  reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements

2  concerning the intensity, persistence and limiting effects of these symptoms are not entirely

3  credible to the extent they are inconsistent with the above residual functional capacity

4  assessment." AR 22. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d

5  at 1281-1282.

6          Because the ALJ did not find that Plaintiff was malingering, he was required to provide

7  clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-1284;

8  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an

9  underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the

10 severity of those symptoms solely because they are unsupported by medical evidence. *Bunnell v.*

11 *Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ

12 to make general findings; he must state which testimony is not credible and what evidence in the

13 record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*,

14 947 F.2d at 345-346.

15         In this case, the Court has carefully reviewed the ALJ's findings. After reciting the legal

16 standards related to an assessment of a claimant's credibility (AR 21-22), ALJ Wallis provided a

17 detailed summary of Plaintiff's testimony at the administrative hearing (AR 22-23), as well as a

18 summary of the medical evidence (AR 24-25). Unfortunately, at the second step of the analysis,

19 the ALJ failed to articulate clear and convincing reasons for discrediting Plaintiff's testimony.

20 General findings are insufficient and ALJ Wallis was required to specifically indicate what

21 testimony was not credible and what evidence led to that conclusion. *Dodrill v. Shalala*, 12 F.3d

22 at 918; *Bunnell v. Sullivan*, 947 F.2d at 345-346. As stated by the Ninth Circuit, if an ALJ

23 wishes to reject pain testimony, he or she is "required to point to specific facts in the record

24 which demonstrate that [Plaintiff] is in less pain than" claimed. *Dodrill*, at 918.

25         The Commissioner's argument that the ALJ provided specific reasons for discounting

26 Plaintiff's testimony are reasons neither discussed nor analyzed by ALJ Wallis. Rather, it is

27

28                                              13

merely rationale based on the ALJ's summary of Plaintiff's testimony.  In this regard, the ALJ's

decision is not conducive to judicial review.  See *Connett v. Barnhart*, 340 F.3d 871, 874 (9th

Cir. 2003) (error to affirm ALJ's credibility decision based on evidence ALJ did not discuss).

### *The Application of the Grids*

Lastly, Plaintiff contends that given her age *at the time of the decision*, the ALJ's

mechanical application of the grids was error.  Because she was a few months from reaching the

category of closely approaching advanced age, the ALJ was required to consider additional

factors affecting her ability to work, and in failing to do so, abused his discretion.  (Doc. 14 at

18-19; *see also* Doc. 16 at 6-8.)  The Commissioner contends no error occurred because *at the

time of the hearing*, Plaintiff was forty-seven years old, and thus the ALJ's consideration was

proper.  Further, the Commissioner asserts that the ALJ relied upon VE testimony at step five,

and therefore, the findings are supported by substantial evidence.  (Doc. 15 at 14-15.)

### 1.    *The Legal Standards*

The claimant has the initial burden of proving the existence of a disability within the

meaning of the Social Security Act.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  The

claimant establishes a prima facie case of disability by showing that a physical or mental

impairment prevents him or her from engaging in his or her previous occupation.  *Gallant v.

Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

However, once the claimant establishes a prima facie case of disability, the burden of going

forward with the evidence shifts to the Secretary.  *Hammock v. Bowen*, 867 F.2d 1209 (9th Cir.

1989).  The Secretary bears the burden of establishing the existence of alternative jobs available

to the claimant, given his or her age, education, and medical-vocational background.  In an

appropriate case, the Secretary may meet this burden through application of the medical-

vocational guidelines set forth in the regulations.[8]  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2

---

[8]For any given combination of factors (residual functional capacity, age, education, and work experience),
the guidelines direct a conclusion of disability or nondisability when they accurately describe a claimant's particular
limitations.

1  ("Appendix 2"); *Heckler v. Campbell*, 461 U.S. 458 (1983); *Odle v. Heckler*, 707 F.2d 439, 440

2  (9th Cir. 1983).  If the guidelines do not accurately describe a claimant's limitations, the

3  Secretary may not rely on them alone to show availability of jobs for the claimant.  *Desrosiers v.*

4  *Secretary*, 846 F.2d 573 (9th Cir. 1988).

5        When the grids do not match the claimant's qualifications, the ALJ can either (1) use the

6  grids as a framework and make a determination of what work exists that the claimant can

7  perform, or (2) rely on a vocational expert when the claimant has significant non-exertional

8  limitations.  *Hoopai v. Astrue*, 499 F.3d 1071 (9th Cir. 2007).  However, the mere allegation of

9  the presence of a non-exertional impairment is not sufficient to preclude application of the

10 guidelines.  Such non-exertional impairment must be found to significantly limit the range of

11 work permitted by a claimant's exertional limitations before the Secretary will be required to

12 obtain expert vocational testimony regarding the availability of other work.  *See, e.g., Polny v.*

13 *Bowen,* 864 F.2d 661 (9th Cir. 1988); *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir. 1988); *Razey*

14 *v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) (modified 794 F.2d 1348 (1986)); and *Perminter*

15 *v. Heckler*, 765 F.2d 870 (9th Cir. 1985).

16              **2.      *Analysis***

17        Plaintiff relies upon *Lockwood v. Commissioner of Social Security*, 616 F.3d 1068 (9th

18 Cir. 2010) in support of her position.  In *Lockwood*, the claimant applied for disability which was

19 denied by the ALJ, and the district court affirmed.  *Id*. at 1070-71.  On appeal to the Ninth

20 Circuit, the claimant argued that the ALJ failed to consider, pursuant to section 404.1563(b) of

21 the Code of Federal Regulations, whether she should be placed in an older age category for

22 purposes of the disability decision.  *Id*. at 1071-72.  The court however determined that the ALJ

23 satisfactorily considered whether to use an older age category.  *Id*. at 1072.  The court reasoned

24 that the ALJ's decision set forth the date of the claimant's birth and stated that she was fifty-four

25 years old and thus closely approaching advanced age on the date of the ALJ's decision.  *Id*.  The

26 court determined that recitation of the claimant's birthday was an indication that the ALJ was

27

28                                          15

aware that claimant was "just shy of her 55th birthday." *Ibid*. Moreover, the court explained that the ALJ cited to Title 20 of the Code of Federal Regulations section 404.1563, which prohibits mechanical application of the age categories in borderline situations, indicating that the ALJ had acknowledged and applied the proper legal standard. *Ibid*. Finally, the court determined that the ALJ did not apply the age categories mechanically because the ALJ evaluated the overall impact of the factors of the case and relied on the testimony of a vocational expert before finding the claimant not disabled. *Ibid*. The court held that this was sufficient consideration by the ALJ of the borderline age issue as the regulation "does not impose any obligation [on the ALJ] to make express findings incorporated into the ALJ's opinion." *Id*. at 1073.

Here, ALJ Wallis satisfied the requirement that he "consider whether to use the older age category" because he mentioned Plaintiff's date of birth of "May 27, 1960" and found Plaintiff was forty-seven years old "which is defined as a younger individual age 45-49" on April 29, 2008, or "the date the application was filed (20 CFR 416.963)." *See* AR 26; *Lockwood*, 616 F.3d at 1071-72. Relatedly then, by acknowledging Plaintiff's date of birth, the ALJ was aware that Plaintiff was forty-nine years, eleven months of age on the date of the hearing, or on March 8, 2010. Therefore, Plaintiff's age presented a borderline situation. Nevertheless, ALJ Wallis expressly states he "[c]onsider[ed] the claimant's age, education, work experience, and residual functional capacity" in determining whether work was available that Plaintiff could perform. AR 26. Nothing more is required.

As the Ninth Circuit found in *Lockwood*, "'the regulation merely promises claimants that the [Social Security] Administration will 'consider' veering from the chronological-age default in borderline situations.'" *Id*. at 1074. Thus, the ALJ did not err by failing to find Plaintiff disabled under Rule 201.21.

Additionally, ALJ Wallis properly relied upon the testimony of a VE. *See* AR 402-405. In *Lockwood*, the court stated it was "satisfied the ALJ did not 'apply the age categories mechanically' because the ALJ 'evaluat[ed] the overall impact of all the factors of [Lockwood's]

1   case' when the ALJ relied on the testimony of a vocational expert before she found Lockwood

2   was not disabled." *Lockwood*, 616 F.3d at 1072.

3   ### *Remand is Required*

4   The ALJ did not provide clear and convincing reasons based on substantial evidence in

5   the record to discount Plaintiff's testimony as "not entirely credible."  In light of this, Plaintiff

6   argues that her testimony should be deemed true.  Crediting an opinion as a matter of law is

7   appropriate when, taking that opinion as true, the evidence supports a finding of disability.  *See*

8   *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

9   Courts retain flexibility, however, in applying this crediting-as-true theory.  *Connett v.*

10   *Barnhart*, 340 F.3d at 876 (remanding for further determinations where there were insufficient

11   findings as to whether plaintiff's testimony should be credited as true).  As the Ninth Circuit

12   pointed out in *Connett*, a remand for further findings regarding the credibility of a Plaintiff is an

13   appropriate remedy.  *See Bunnell v. Sullivan*, 947 F.2d at 348 (specifically affirmed district

14   court's order remanding for further proceedings where ALJ failed to explain with sufficient

15   specificity the basis for rejecting claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th

16   Cir. 1995) ("We therefore remand this case to the ALJ for further findings evaluating the

17   credibility of [the claimant's] subjective complaints"); *Dodrill v. Shalala*, 12 F.3d at 919

18   (specifically remanding for ALJ to "articulat[e] specific findings for rejecting [the claimant's]

19   pain testimony and the testimony of lay witnesses").

20   Here, there are insufficient findings regarding whether Plaintiff's testimony should be

21   credited as true, and the matter must also be remanded for the ALJ to provide sufficient findings

22   related to the medical evidence of record.

23   //

24   //

25   //

26   //

27

28                                                    17

1

## <u>CONCLUSION</u>

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Svetlana Gyulnazaryan and against Defendant Michael J. Astrue, Commissioner of Social Security.


IT IS SO ORDERED.

**Dated:**   <u>**October 18, 2012**</u>        <u>    **/s/ Gary S. Austin**         </u>
                                        UNITED STATES MAGISTRATE JUDGE

18